641 F.2d 339
 81-1 USTC P 9310
 George E. GLAZE, Administrator of the Estate of William M.
Currie, Jr., Linda Drake, Martha Christian, Donna
Currie, Rebecca Ridling and Beverly
Currie, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 80-7133.
 United States Court of Appeals,
Fifth Circuit.
 Unit B
 
 1
 April 2, 1981.
 
 
 2
 M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., Robert A. Bernstein, Jo-Ann Horn, Michael L. Paup, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.
 
 
 3
 Joseph R. Manning, Oby T. Brewer, III, James M. Saunders, Atlanta, Ga., for plaintiffs-appellees.
 
 
 4
 Appeal from the United States District Court for the Northern District of Georgia.
 
 
 5
 Before HILL and FRANK M. JOHNSON, Jr., Circuit Judges and SCOTT,* District Judge.
 
 CHARLES R. SCOTT, District Judge:
 
 6
 William M. Currie, Jr. died intestate on January 4, 1971. George E. Glaze was appointed administrator of Currie's estate on March 17, 1971. On December 17, 1971, Glaze, as administrator, filed the decedent's income tax return for 1970, designating Currie's marital status as "single."
 
 
 7
 At the time of his death, Currie was living with June Barrow, though they were never formally married. Prior to the appointment of Glaze as administrator, June Barrow instituted an action in the Court of Ordinary, Clayton County, Georgia, seeking Letters of Administration and a statutory share of Currie's estate. The action was predicated upon her assertion that she was Currie's common-law wife.
 
 
 8
 On March 9, 1971, despite opposition by the children of the decedent, the Court of Ordinary granted Barrow's petition, ruling that William Currie was married to June Barrow at the time of his death.[1] This finding was appealed and on September 1, 1974, a jury reached the same conclusion in a de novo proceeding in the Superior Court of Clayton County.
 
 
 9
 Following this determination, on December 17, 1974, Glaze filed an amended joint income tax return for 1970 in the names of William M. and June B. Currie. The return sought a refund of income taxes in the amount of $17,998.00. The Commissioner of the Internal Revenue Service disallowed the refund claim on the ground that it was not timely filed pursuant to Section 6013(b)(2).[2] Glaze, joined by the children of the decedent, subsequently filed suit for refund of the overpayment. On September 29, 1979, the district court entered an order granting plaintiffs-appellees' cross-motion for summary judgment and denying the defendant-appellant's motion for summary judgment.
 
 
 10
 The district court held that the limitation period contained in Section 6013(b)(2) was inapplicable and turned instead to Section 6511. Section 6511 prescribes a limitation period applicable to refund claims generally. Applying the time period contained in that section, the district court concluded that the amended joint return was timely filed and allowed the refund claim.
 
 
 11
 The sole question presented on appeal is whether the district court correctly determined that the limitation period of Section 6013(b)(2) was inapplicable to these facts, thereby necessitating a reference to the statutory period governing refund claims provided in Section 6511(a).
 
 
 12
 Persons occupying the status of husband and wife are authorized under the Internal Revenue Code to file either joint or separate returns; that is, they can file as "married individuals filing joint returns" or "married individuals filing separate returns." Section 1; Section 6013; Reg. Section 1.6013-1(a)(1).
 
 
 13
 Section 6013 authorizes a husband and wife to file a single joint return of their income taxes. Prior to passage of the Revenue Act of 1951, the election to file jointly or separately was irrevocable. In 1951, however, Section 51, predecessor to Section 6013 of the 1954 Code, was amended to allow married taxpayers who had previously made an election to file separately to revoke their election and file a joint return.
 
 
 14
 Section 6013(b)(1) currently reads in pertinent part as follows:
 
 
 15
 (b) Joint return after filing separate return.
 
 
 16
 (1) In general. (I)f an individual has filed a separate return for a taxable year for which a joint return could have been made by him and his spouse under subsection (a) and the time prescribed by law for filing the return for such taxable year has expired, such individual and his spouse may nevertheless make a joint return for such taxable year .... If a joint return is made under this subsection, any election (other than the election to file a separate return ) made by either spouse in his separate return for such taxable year with respect to the treatment of any income, deduction, or credit of such spouse shall not be changed in the making of the joint return where such election would have been irrevocable if the joint return had not been made. (Emphasis added).
 
 
 17
 Section 6013(b)(2)(B) sets forth the limitation period for filing an amended joint return authorized by Section 6013(b)(1):
 
 
 18
 (2) Limitations for making of election. The election provided for in paragraph (1) may not be made
 
 
 19
 (B) After the expiration of three years from the last date prescribed by law for filing the return for such taxable year (determined without regard to any extension of time granted to either spouse);
 
 
 20
 There is no question that if the limitation period referred to above is applicable, the appellees must lose in their quest for a refund. The last day upon which an amended joint return could have been timely filed under Section 6013(b)(2)(B) was April 15, 1974, i. e., three years subsequent to the time prescribed by law for filing the decedent's 1970 tax return, without regard to any extensions. As noted above, the administrator did not file decedent's initial 1970 tax return until December 17, 1971.
 
 
 21
 The district court concluded that the limitation period set forth in Section 6013(b)(2) was not applicable to this case because decedent's administrator could not have filed a joint return within the meaning of Section 6013(b)(1) prior to the jury determination that William Currie and June Barrow were married at the time of Currie's death, i. e., prior to September 1, 1974.[3] Consequently, the court turned to and applied the limitation period contained in Section 6511(a), a broader provision governing claims for refunds of an overpayment of any tax. That subsection provides:
 
 
 22
 (a) Period of limitation on filing claim. Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within three years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within two years from the time the tax was paid.
 
 
 23
 Applying this limitation period, the district court concluded that the amended joint return was timely filed as a claim for refund in that it was filed within three years (on December 17, 1974) from the date decedent's 1970 return was originally filed (December 17, 1971).
 
 
 24
 Appellant contends the district court erred in disregarding the limitation period of Section 6013(b)(2), arguing that Section 6013 provides the sole authority for filing an amended joint return. Consequently, appellant maintains that the district court was prohibited from looking outside Section 6013 to Section 6511.
 
 
 25
 This case presents a question of first impression. Consequently, in resolving this matter we must be guided primarily by congressional intent as evidenced by the plain language and legislative history of Section 6013.
 
 
 26
 It is clear that Section 6013 was enacted as a matter of legislative grace to permit married taxpayers to escape the adverse financial consequences resulting from an injudicious election to initially file separate returns rather than a single joint return. The Senate Report states that proper elections frequently require informed tax knowledge not possessed by the average person, and, hence, the previously binding nature of the election sometimes resulted in the payment of substantially excessive taxes. Thus, the Code was amended to provide that "married individual income taxpayers who file separate returns may exercise the right to change their election and file joint returns at any time within the period of the statute of limitations." (Emphasis added). Sen.Rep.No.781, 82d Cong., 1st Sess., reprinted in (1951) U.S.Code Cong. & Ad.News 1969, 2018.
 
 
 27
 The above-quoted statement from the Senate Report highlights the critical requisite governing the applicability of Section 6013 which is missing in the case sub judice the section requires a previous election by a married person to tile a separate return.[4] That this is a foundational threshold to any application of Section 6013 is apparent from the language contained in the statute itself, the regulations, the legislative history and even the appellant's brief.[5]
 
 
 28
 In the absence of some contrary indication, courts construing the Internal Revenue Code must assume the authors intended the words used to be accorded their ordinary meaning. Jones v. Liberty Glass Co., 332 U.S. 524, 531, 68 S.Ct. 229, 232, 92 L.Ed. 142, 148 (1947), rehearing denied, 333 U.S. 850, 68 S.Ct. 657, 92 L.Ed. 1132 (1948). Use of the word "separate" can only be deemed to refer to the filing status of "married, filing separately." The term "election" embodies the notion of choice. A reading of Section 6013(b) (1) and Section 6013(b)(2) leads to only one inference, i. e., the section is applicable only to the situation where a married taxpayer has made an election to file a separate (not "single") return and later decides that he/she wants to revoke that choice.
 
 
 29
 In the instant case, there was never any election until the filing of the joint return on December 17, 1974. The decedent had never made a previous election to file a separate return. He had, by his administrator, filed a "single" return. This is an entirely distinct category from "married, filing separately." It is clear that Section 6013 was never intended to cover situations such as the one presented here where a taxpayer erroneously lists his status as single rather than married.
 
 
 30
 Decedent's "single" tax status, as listed on his initial return for 1970, was incorrect in light of the later determination by the Superior Court that decedent was married to June Barrow at the time of his death. Decedent's administrator had a duty to correct the return to reflect the decedent's proper marital status for the taxable year of 1970.[6] A married person has an option to file either a joint return or a separate return, but is not permitted to file a single return.
 
 
 31
 The district court, having determined that Section 6013, including the limitation period of Section 6013(b)(2) was inapplicable to the instant facts, properly made reference to the limitation period of Section 6511. The latter provision applies to an overpayment of any tax. No one denies that an overpayment occurred in this case.
 
 
 32
 Section 6511 is a broad provision permitting a taxpayer to recover any overpayment of any tax. An overpayment occurs "whenever a taxpayer has paid an amount over and above his true tax liability," Kavanagh v. Noble, 332 U.S. 535, 538, 68 S.Ct. 235, 236, 92 L.Ed. 150, 152 (1947), rehearing denied, 333 U.S. 850, 68 S.Ct. 656, 92 L.Ed. 1132 (1948), or whenever there is "any payment in excess of that which is properly due," irrespective of the reason therefor. Jones v. Liberty Glass Co., 332 U.S. 524, 531, 68 S.Ct. 229, 232, 92 L.Ed. 142, 148 (1947), rehearing denied, 333 U.S. 850, 68 S.Ct. 657, 92 L.Ed. 1132 (1948). Overpayment of tax may be recovered regardless of whether it resulted from a mistake of fact or of law. Supino v. United States, 192 F.Supp. 389 (D.C.N.J.1961). Courts will strain to interpret the language of Section 6511 allowing for refund of excess taxes paid in a way that will avoid hardship upon the taxpayer, subject only to the limitation that the plain language of the section will not be ignored. Chemical Bank New York Trust Co. v. United States, 275 F.Supp. 26 (D.C.N.Y.), aff'd 386 F.2d 995 (2d Cir. 1967).[7]
 
 
 33
 The cases relied upon by the government to support its position that Section 6013(b)(2) is applicable are inapposite. See Durovic v. Commissioner, 54 T.C. 1364 (1970), aff'd, 487 F.2d 36 (7th Cir. 1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974); Marshall v. Commissioner, P-H Memo T.C., P 76,034 (1976); Speer v. Commissioner, P-H Memo T.C., P 62,220 (1962); Kotovic v. Commissioner, P-H Memo T.C. P 59,177 (1959).
 
 
 34
 Marshall involved a situation where a taxpayer, in a 1973 letter to the Commissioner, attempted to adopt the joint return filed by her ex-husband back in 1967. The taxpayer and her husband were separated that year and taxpayer had filed a separate return. The Tax Court held that she had made her initial election to file a separate return and was prohibited by the limitation period of Section 6013(b)(2) from subsequently electing to adopt her husband's joint return.
 
 
 35
 In Speer, the taxpayer's return for 1955 designated his status as a married person, filing separately. At a conference with revenue agents on March 16, 1959, petitioner offered to file a joint return for 1955. No actual amended joint return was filed until June 29, 1960. The Tax Court found the election to be untimely. The case stands only for the unstartling proposition that a taxpayer's mere offer to file a joint return does not constitute an effective election. To constitute an effective election to file an amended joint return subsequent to an initial election to file a separate return, the joint return must actually be filed within the period prescribed by Section 6013(b)(2). Although this is undeniably true, it is irrelevant to the instant case where there was never an initial election to file a separate return.
 
 
 36
 Kotovic is similar to Speer. Taxpayer had filed a separate return for 1952. He claimed that his offers to file a joint return made to revenue agents during audit negotiations occurring prior to expiration of the Section 6013(b)(2) time period constituted a timely election within Section 6013. The Tax Court disagreed, noting that he did not physically prepare or file any paper purporting to be a joint income tax return until March 14, 1957, four years subsequent to the filing of his 1952 return.
 
 
 37
 Durovic is the only case relied upon in which there had not been a previous election by a married person to file a separate return. It involved married taxpayers who initially failed to file any return at all. Subsequent to expiration of the Section 6013(b)(2) time period for the year in question, the Durovics filed a joint return. The Court of Appeals upheld the Tax Court's determination that the joint return was untimely filed. The court held that, due to the failure to file any return whatsoever, the Commissioner was required to make the election for the taxpayers and that such election could not thereafter be altered. Durovic, supra, at 42.
 
 
 38
 As noted by Judge Swygert in his dissenting opinion, the majority read into Section 6013(b)(2) a purpose to foster voluntary disclosure by taxpayers. Id. at 54. The majority was reluctant to put a "power in the hands of a recalcitrant taxpayer" to avoid the limitation period of Section 6013(b)(2). Id. at 42.
 
 
 39
 Without accepting the wisdom of this broad reading of Section 6013(b)(2), it is necessary to note only that neither the reasoning nor the factual framework from which it was constructed is applicable to the instant case. The facts before us do not involve a recalcitrant taxpayer attempting to utilize his recalcitrance to his advantage.[8]
 
 
 40
 Furthermore, a subsequent Revenue Ruling calls into question the continued vitality of the Durovic decision. Rev.Rul. 72-539, 1972-2 C.B. 634, states as follows:
 
 
 41
 This limitation in Section 6013(b)(2) of the Code deals specifically with an election to file a joint return after the filing of separate returns. The statute is silent concerning joint returns where no separate returns have been filed for the same taxable year. Therefore, even though the election to change from a separate return to a joint return is barred after the expiration of three years from the last date prescribed for filing a return, this does not preclude an election to file a joint return for the first time. (Emphasis added).
 
 
 42
 This revenue ruling reinforces the position that Section 6013(b) is limited by its terms to cases where there has been an initial election to file a separate return.
 
 
 43
 One must be careful not to stray too far into the forest of technical legal reasoning so as to obscure the light of common sense. Common sense should play a part in all court decisions, including those involving the construction of tax statutes. Commissioner v. Meyer, et al., 139 F.2d 256, 259 (6th Cir. 1943).
 
 
 44
 It would be absurd to advance the proposition that in enacting Section 6013(b) (1), (2) Congress had in mind the unusual factual circumstances of this case. We have here an administrator to an estate who was caught in the middle of a dilemma. His duty was to protect the assets of the estate. Had he filed a joint return at the outset, he would have invited litigation from two distinct sources the decedent's children and the Internal Revenue Service. The children of decedent, who were vigorously opposing June Barrow's petition, would have likely sued for breach of his fiduciary duty inasmuch as the filing of a joint return could have been deemed strong evidence of the validity of the purported common-law marriage. Additionally, filing of the joint return would have opened the door to litigation with the Internal Revenue Service. On appeal, appellant does not argue that litigation challenging the joint status would have been unlikely. Counsel merely maintains that the litigation could have proceeded simultaneously with the state court litigation. Such litigation would have caused substantial depletion of the estate assets.
 
 
 45
 As the district court properly determined, when faced with alternative statutory constructions, one of which is unreasonable, unfair and burdensome, and one that is reasonable and equitable, a court is obligated to adopt the latter. The district court correctly held the limitation period of Section 6013(b)(2) to be inapplicable and properly applied the limitation period of Section 6511.
 
 
 46
 AFFIRMED.
 
 
 
 *
 District Judge of the Middle District of Florida, sitting by designation
 
 
 [1]
 The record is unclear as to why Glaze was named administrator approximately one week after the Court of Ordinary had granted Letters of Administration to June Barrow
 
 
 [2]
 All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated
 
 
 [3]
 The district court relied upon the following language of Section 6013(b) (1):
 (I)f an individual has filed a separate return for a taxable year for which a joint return could have been filed ... such individual ... may nevertheless make a joint return for such taxable year .... (Emphasis added).
 Having concluded that Section 6013 is inapplicable to this case for the reason that no initial election was ever made to file separate returns as married persons (see text and accompanying notes supra ), we need not discuss this point.
 
 
 [4]
 The statute actually embodies two elections, an initial election to file separate returns and a subsequent election to file a joint return
 
 
 [5]
 "(I)f married taxpayers have initially filed separate returns they may opt to revoke this election and file a joint amended return." Brief for Appellant at 8
 
 
 [6]
 It is noteworthy that in response to questioning during oral argument, counsel for the government conceded that, had taxpayer sought to amend his admittedly incorrect "single" return to reflect a status of "married, filing separately," rather than "married, filing jointly," the limitation period of Section 6511 would apply
 
 
 [7]
 The conclusion that the limitation period of Section 6013(b)(2)(B) is inapplicable where a married taxpayer erroneously files a single return rather than making an election in the first instance, does not open a legal can of worms. The taxpayer remains bound by the limitation period of Section 6511 which in the majority of cases will be shorter than that imposed by Section 6013(b)(2)(B). Under Section 6013(b)(2)(B), the taxpayer will always have a minimum of three years from the prescribed date for the initial filing to file an amended return, i. e., three years subsequent to April 15 of the relevant year. However, under Section 6511, the latest date upon which a taxpayer can file a claim for refund will generally be three years from the date the return was filed. In most cases, returns are filed prior to the April 15 deadline
 
 
 [8]
 It could also be argued that Durovic is in accord with the decision in the case sub judice. In Durovic, there was an initial election to file as "married, filing separately," albeit that election was made by the Commissioner